## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ISAAC NARANJO, | : | CIVIL ACTION NO. 1:20-CV-918 |
| | : | |
| Plaintiff | : | (Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| T. WALTER, *et al.*, | : | |
| | : | |
| Defendants | : | |

### MEMORANDUM

This is a prisoner civil rights case under 42 U.S.C. § 1983.  Plaintiff has filed three motions to compel discovery, two of which are ripe for the court's disposition.  For the reasons that follow, we will deny the ripe motions to compel discovery.

### I. Factual Background & Procedural History

Plaintiff Isaac Naranjo is an inmate in the Pennsylvania Department of Corrections currently confined in the State Correctional Institution in Houtzdale, Pennsylvania ("SCI-Houtzdale").  At all times relevant to this case, he was confined in the State Correctional Institution at Rockview ("SCI-Rockview").

Naranjo initiated this cased through the filing of a complaint on July 27, 2018, alleging violations of his civil rights by various defendants employed by SCI-Rockview.  Defendants answered the complaint on September 22, 2020, and Naranjo then filed two motions to compel discovery on November 16, 2020 and November 19, 2020.  Briefing on the motions to compel is complete and the motions are ripe for the court's disposition.

Naranjo amended his complaint on February 16, 2021, and his amended complaint remains the operative pleading in the case. Defendants answered the amended complaint on August 5, 2021. Naranjo has since filed a third motion to compel discovery. That motion is not yet ripe for the court's disposition, and this opinion only addresses Naranjo's first two motions to compel discovery.

**II.     Plaintiff's Factual Allegations**

In his amended complaint, Naranjo alleges that he was transferred from SCI-Forest to SCI-Rockview on July 9, 2019, so that he could complete phase 1 placement in the prison's general population, which was necessary for him to complete the DOC's special management program. (Doc. 35 ¶ 16).

The day after his transfer, Naranjo appeared in front of Defendants Gerald McMahon, Timothy Miller, and Morris Houser for a hearing as to whether he could be released from the prison's Restricted Housing Unit ("RHU"). (Id. ¶ 17). McMahon, Miller, and Houser allegedly told him that he would need to complete six months in general population to complete the special management program. (Id. ¶ 18). This was contrary to Naranjo's understanding of the relevant DOC policy, which was that he would only need to complete 90 days in general population. (Id.)

After Naranjo completed 90 days in general population, he informed prison staff that he had done so and stated his understanding that he had completed phase 1 of the special management program. (Id. ¶ 20). Prison staff again informed him that he needed to complete six months in general population. (Id. ¶ 22).

On November 14, 2019, Naranjo was given a prison disciplinary charge for presence in an unauthorized area when a prison official allegedly saw Naranjo

going down a set of stairs that he was not supposed to go down.  (<u>Id.</u> ¶ 28).  Naranjo was given a disciplinary hearing on November 18, 2019 before defendant Trisha Walter, who was employed by the prison as a disciplinary hearing officer.  (<u>Id.</u> ¶ 29).  Naranjo allegedly told Walter that he was innocent of the charge of presence in an unauthorized area because he was in a different wing of the prison at the relevant time.  (<u>Id.</u>)  Naranjo gave Walter the name of another prison employee who could corroborate his account.  (<u>Id.</u>)  Walter postponed the hearing so that she could interview that employee.  (<u>Id.</u> ¶ 30).

Naranjo was given another misconduct charge on November 21, 2019, based on an incident in which he allegedly pulled his penis out of his pants and began masturbating in front of a correctional officer.  (<u>Id.</u> ¶ 36).  Naranjo was given a hearing on this misconduct charge before Defendant Walter.  (<u>Id.</u> ¶ 38).  Naranjo argued that the misconduct charge should be dismissed because it did not comply with DOC regulations and because video evidence rebutted the correctional officer's account of the incident.  (<u>Id.</u> ¶¶ 38-39).  Walter allegedly told Naranjo that she did not care about DOC policy and that she was only going to review the video evidence.  (<u>Id.</u> ¶ 40).  Walter also allegedly told Naranjo that if Naranjo wanted "special treatment" he had to perform oral sex on her.  (<u>Id.</u>)  The other correctional officers present in the hearing—defendants Hall, Weller, and Curtis—smiled at this comment and told Naranjo that if he wanted "special treatment" he would also have to perform oral sex on them.  (<u>Id.</u> ¶ 41).

Naranjo allegedly attempted to report the sexual harassment by Walter and the other correctional officers by making a phone call, but a member of the prison's

staff told him that he was not allowed to make such a call.  (Id. ¶ 43).  The staff member purportedly told Naranjo that he would contact the appropriate official to report the alleged harassment on Naranjo's behalf.  (Id.)  Later that day, defendant Weller came to Naranjo's cell and told him "now snitch you will get some RHU time bitch."  (Id. ¶ 44).

Sometime after Defendant Weller threatened Naranjo with time in the RHU, Naranjo received decisions from Defendant Walter as to Naranjo's two pending disciplinary charges.  (Id. ¶ 45).  The decisions found Naranjo guilty of both charged offenses.  (Id. ¶¶ 45-47).  Naranjo alleges that these decisions were made in retaliation for his attempt to report the sexual harassment by Walter, Weller, Hall, and Curtis.  (Id. ¶¶ 46-48).

Naranjo again attempted to report the defendants' sexual harassment on November 26, 2019.  (Id. ¶ 50).  Naranjo was told that he could not make such a report through a phone call but that a staff member would report the incident on his behalf.  (Id.)  Naranjo then spoke to defendant Lieutenant Sherman later that day and began to tell him about the alleged harassment.  (Id. ¶ 51).  Sherman allegedly told Naranjo to stop attempting to report the incident and threatened to write him up for misconduct if he continued in his efforts.  (Id.)  Naranjo told Sherman that he was going to file paperwork to report Sherman's comments, and Sherman allegedly responded "I don't give [a] fuck about you[r] paperwork.  You know what[,] kiss my white ass."  (Id. ¶ 52).  Sherman then allegedly told Walter, Weller, Curtis, and Hall that Naranjo was attempting to file complaints against them.  (Id.)

Shortly after Naranjo's exchange with Sherman, defendants Hall and Curtis took him to the prison medical unit.  (Id. ¶ 53).  A member of the prison's staff attempted to interview him about his allegations against Walter, Weller, Hall, and Curtis, but Naranjo refused to say anything for fear of retaliation by Hall and Curtis.  (Id.)  Naranjo subsequently gave a written statement to the same staff member explaining his refusal to talk.  (Id.)

The next day, November 27, 2019, defendants Walter and Weller approached Naranjo while he was reading a newspaper and Walter allegedly asked him if he was a "fag" because he did "not like suck[ing] pussy."  (Id. ¶ 54).  Walter then purportedly asked him how he would feel about ninety days of disciplinary confinement and said "this is SCI-Rockview, I do what I want to do."  (Id.)  Naranjo told Walter to leave him alone, and Walter allegedly said, "fuck you" in response.  (Id. ¶ 55).  Minutes later, defendant Hall came to Naranjo's cell and allegedly called him a "rat" and a "fag."  (Id.)

Naranjo appealed the disciplinary charges against him, (id. ¶¶ 56-59), and then began a hunger strike to protest the way he had been treated.  (Id. ¶ 60).  Prison staff placed Naranjo in the infirmary in a psychiatric observation cell based on the hunger strike.  (Id.)  Naranjo told a doctor in the infirmary that he refused to eat until he could speak to senior officials about his allegations against Walter, Weller, Hall, and Curtis.  (Id. ¶ 64).  The doctor allegedly told Naranjo that he had spoken with senior officials about Naranjo's allegations and that they had told him that they were aware of the allegations but that the allegations were not going to change anything.  (Id. ¶ 65).

On December 30, 2019, the superintendent of SCI-Rockview, defendant Garman, upheld the disciplinary decisions against Naranjo. (Id. ¶ 68). Naranjo was then placed in protective custody on January 1, 2020 based on a determination that placement in general population would endanger his safety. (Id. ¶ 69).

On January 9, 2020, defendant Garman informed Naranjo that he was going to be returned to the Special Management Unit ("SMU") because he had failed phase 1 of the special management program. (Id. ¶ 72). On January 15, 2020, defendants McMahon, Houser, and Miller approached Naranjo and allegedly asked him if he wanted to return to general population. (Id. ¶ 74). Naranjo said that he did, and defendant Houser allegedly told him that he needed to withdraw his complaints against Walter, Weller, Hall, Curtis, and Sherman or he would never be allowed to return to general population. (Id. ¶ 75). McMahon, Houser, and Miller subsequently issued a report stating that Naranjo should remain in protective custody, which Naranjo alleged was done in retaliation for his refusal to withdraw his complaints against Walter, Weller, Hall, Curtis, and Sherman. (Id. ¶¶ 78-79). Naranjo then appeared for a hearing in front of McMahon, Houser, and Miller on February 12, 2020, and they allegedly informed him that they were going to place him in the SMU indefinitely based on his refusal to withdraw his complaints against the other defendants. (Id. ¶ 80).

Naranjo's amended complaint raises claims under 42 U.S.C. § 1983 for retaliation in violation of the First Amendment, sexual harassment in violation of the Eighth Amendment, and violation of Naranjo's right to petition the government in violation of the First Amendment. He seeks declaratory relief, injunctive relief

requiring defendants to stop retaliating against him, injunctive relief requiring

defendants to remove him from disciplinary and protective custody and return him

to general population, expungement of his disciplinary convictions, compensatory

damages, punitive damages, and court costs.

## III.   <u>Legal Standard</u>

A party who has received evasive or incomplete discovery responses may

seek a court order compelling disclosures or discovery of the materials sought.  FED.

R. CIV. P. 37(a).  The moving party must demonstrate the relevance of the

information sought to a particular claim or defense.  The burden then shifts to the

opposing party, who must demonstrate in specific terms why a discovery request

does not fall within the broad scope of discovery or is otherwise privileged or

improper.  <u>Goodman v. Wagner</u>, 553 F. Supp. 255, 258 (E.D. Pa. 1982).

Generally, courts afford considerable latitude in discovery in order to ensure

that litigation proceeds with "the fullest possible knowledge of the issues and facts

before trial."  <u>Hickman v. Taylor</u>, 329 U.S. 495, 501 (1947).  Federal Rule of Civil

Procedure 26(b)(1) provides that a party "may obtain discovery regarding any

nonprivileged matter that is relevant to any party's claim or defense and

proportional to the needs of the case. . . . Information within this scope of discovery

need not be admissible in evidence to be discoverable."  FED. R. CIV. P. 26(b)(1).

"[A]ll relevant material is discoverable unless an applicable evidentiary privilege is

asserted.  The presumption that such matter is discoverable, however, is

defeasible."  <u>Pearson v. Miller</u>, 211 F.3d 57, 65 (3d Cir. 2000).  Furthermore, the

court may limit discovery if the discovery sought is unreasonably cumulative,

duplicative, or readily obtainable from some other source, the party seeking

discovery has had ample opportunity to obtain the information through discovery,

or the proposed discovery is outside the scope permitted by Rule 26(b)(1).  FED. R.

CIV. P. 26(b)(2)(C).

## IV.   <u>Discussion</u>

Naranjo's motions to compel discovery arise from a request for production of

documents that he made on September 26, 2020.  (Doc. 23 at 1).  Naranjo argues that

because defendants failed to respond to the request until seventeen days after the

applicable deadline, they waived any objections they had to his discovery requests.

(<u>Id.</u> at 1-2).  Naranjo further argues that the discovery sought is relevant to claims

and defenses in the case.  (<u>Id.</u> at 2-6).  He specifically seeks discovery as to four

categories of information: (1) any and all documented adjustment records regarding

his special management placement that were reviewed by defendant Miller,

including relevant vote sheets; (2) the version of DOC policy 6.5.1 on which SCI-

Rockview staff relied in making decisions on his SMU placement; (3) documents

indicating how many bed spaces were available in the SCI-Forest SMU at the

relevant time; and (4) documents indicating how many inmates were transferred

from SCI-Rockview to another institution from May 2020 until the date of the

defendants' response.  We will review Naranjo's waiver argument and specific

discovery requests *seriatim*.

### A.  Waiver

Naranjo argues that defendants waived their objections to his discovery

requests by failing to respond to the requests within thirty days.  (Doc. 23 at 1-2).

The court will reject this argument because it is not supported by the text of the Federal Rules of Civil Procedure.

The Federal Rules of Civil Procedure set thirty-day timelines for parties to respond to interrogatories and requests for production of documents.  See FED. R. CIV. P. 33, 34.  Under Rule 33, which governs interrogatories, failure to raise objections to interrogatories within thirty days constitutes a waiver of those objections unless the court finds that there is good cause to excuse the failure.  FED. R. CIV. P. 33.  Rule 34, which governs the production of documents, does not contain the same automatic-waiver provision, instead simply requiring parties to respond to requests for production of documents within thirty days and requiring objections to "state whether any responsive materials are being withheld" on the basis of those objections.  FED. R. CIV. P. 34.

Several district court opinions in this circuit have held that parties waive their objections to discovery requests when they fail to respond to the requests within thirty days.  See, e.g., Bolus v. Carnicella, No. 4:15-CV-1062, 2009 WL 1795177, at *3 (M.D. Pa. Nov. 5, 2020); SWIMC, Inc. v. Hy-Tech Thermal Solutions, Inc., No. 08-CV-84, 2009 WL 1795177, at *3 (D. Del. June 24, 2009); Harris v. PV Holding Corp., No. 09-CV-1568, 2009 WL 2600415, at *1 (E.D. Pa. Aug. 20, 2009).  Their reasoning, however, appears to be based on an erroneous application of Rule 33 to requests for production of documents.  See, e.g., Harris, 2009 WL 2600415, at *1 (citing Rule 33(b)(4) for the proposition that "the failure to timely respond to discovery requests results in a waiver of the objection").

We decline to follow these courts because Rule 33 governs only written interrogatories and "Rule 34 does not by its terms provide that objections will be deemed waived" based on an untimely response to a request for production of documents. Scaturro v. Warren & Sweat Mfg. Co., Inc., 160 F.R.D. 44, 46 (M.D. Pa. 1995). Moreover, there is no basis to extend Rule 33's automatic-waiver provision to requests for production of documents, as "the inclusion of an automatic-waiver provision in Rule 33 implies that its omission from Rule 34 is no accident." PEG Bandwidth PA, LLC v. Salsgiver, Inc., No. 3:16-CV-178, 2017 WL 2992219, at *3 (W.D. Pa. July 3, 2017) (citing Ashford v. City of Milwaukee, 304 F.R.D. 547, 549 (E.D. Wis. 2015)). Thus, objections to requests for production of documents are not automatically waived when parties fail to raise the objections within 30 days. See FED. R. CIV. P. 34. Instead, parties "*may* be held to have waived" objections if they egregiously fail to comply with Rule 34's 30-day time limit. Scaturro, 160 F.R.D. at 46.

No such egregious failure took place in this case. Defendants acknowledge that they did not respond to Naranjo's request for production of documents within thirty days and that their response was approximately three weeks late, but they explain that the delay was an unforeseen consequence of the implementation of COVID-19 protocols at SCI-Rockview which complicated the compilation of responsive documents. We find this to be a reasonable explanation for the relatively brief delay in responding to Naranjo's request and conclude that defendants have not waived their objections.

### B. Adjustment Records and Voting Sheets

Naranjo requests production of "any and all documented adjustment records made by SCI Rockview staff [regarding] plaintiff Naranjo['s] SMU phase 1 probation process supposedly reviewed by defendant Miller including the vote sheet process indicated in attachment 1-D response by T. Miller to Plaintiff grievance #845898."  (Doc. 23-1 at 3).  Naranjo argues that the requested documents are relevant because they will help him "prove defendants' retaliatory motive." (Doc. 23 at 3).  Defendants produced some documents in response to Naranjo's request, but withheld adjustment records and vote sheets based upon deliberative process privilege.  (Doc. 23-1 at 3).

The deliberative process privilege allows the government to withhold from discovery documents "containing 'confidential deliberations of law or policymaking, reflecting opinions, recommendations or advice.'"  Redland Soccer Club, Inc. v. Dep't of Army of United States, 55 F.3d 827, 853 (3d Cir. 1995) (quoting In re Grand Jury, 821 F.2d 946, 959 (3d Cir. 1987)).  The government bears the initial burden of asserting the privilege and making a sufficient showing that the privilege applies. Id. at 854.  When the government has made that initial showing, the court should balance the interests of the parties, and the party seeking discovery "bears the burden of showing that its need for the documents outweighs the government's interest" in withholding the documents.  Id.  In balancing the parties' interests, the court should consider "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the

possibility of future timidity by government employees who will be forced to recognize that their secrets are violable." Id. (quoting First Eastern Corp., 21 F.3d 465, 468 n.5 (D.C. Cir. 1994)).

Defendants have made an initial showing that the deliberative process privilege applies as they note that the requested adjustment records and vote sheets contain frank evaluations and candid assessments of an inmate's adjustment to a new custodial setting. (Doc. 24 (citing Yates v. Painter, 3:05-CV-1723, 2010 WL 11661295, at *7 (M.D. Pa. Mar. 26, 2010))). In light of that initial showing, the court has balanced Naranjo's need for the requested documents with the government's interest in withholding the documents. Redland Soccer Club, 55 F.3d at 854.

Notably, Naranjo makes no argument as to why his need for the documents outweighs the government's interest. (See Doc. 27). Instead, he simply notes that the court may conduct an *in camera* review to determine whether the deliberative process privilege applies. (Id. at 2). This is true, but Naranjo has the burden to persuade the court that his need for the documents outweighs the government's interest in withholding the documents. He has not done so. We perceive of no independent basis for production which is not otherwise outweighed by the government's security concerns, and we decline to exercise our discretion to undertake an *in camera* review. Thus, after weighing the parties' interests, we conclude that the deliberative process privilege applies and we will not compel production of the requested adjustment records and vote sheets.

### C.  DOC Policy 6.5.1

Naranjo seeks production of "copies from the department policy 6.5.1 regarding the SMU including the SCI Forest SMU rule." (Doc. 23-1 at 4).  Naranjo asserts that he needs a copy of the policy to show that he did not in fact fail the DOC's SMU policies and to help prove the defendants' retaliatory motive. Defendants object that Policy 6.5.1 is a confidential document relating to Level 5 housing in the DOC that contains sensitive information relating to the supervision, safety, and control of inmates in that housing classification. (Doc. 24 at 7).

The court agrees with numerous federal courts that have found that Policy 6.5.1 is confidential and that the government's interest in protecting the sensitive information contained in the policy outweighs a prisoner plaintiff's interest in viewing the policy.  See Mercaldo v. Wetzel, No. 1:13-CV-1139, 2016 WL 5851958, at *3 (M.D. Pa. Oct. 6, 2016) (collecting cases).  Accordingly, we will not compel production of the policy.

### D.  Bed Spaces in the SCI-Forest SMU and Records of Inmate Transfers

Naranjo's last two requests seek "documents indicating how many bed spaces were available and are currently available in SCI Forest [S]MU unit since Nov. 19, 2019 until the date of [the defendants'] response" and "documents indicating how many inmates ha[ve] been transferred from SCI Rockview to another institution including to the SCI Forest-SMU unit since May 2020 until the date of [the defendants'] response." (Doc. 23-1 at 5-6).  The government objects that these requests are not relevant to the claims or defenses in this case, (see id.), but Naranjo argues that the requested information is necessary to rebut defenses that

13

defendants might raise in this case.  (Doc. 23 at 5-6).  Specifically, Naranjo states that defendants could press a defense "that they did not send the plaintiff back to the SCI-Forest SMU program one year ago because no bed spaces were available in the SMU" and that they could argue that they did not transfer Naranjo to a different facility "because [of] COVID-19" or "because [of] the opinion [of] central office."  (<u>Id.</u>)  Defendants respond that they have not raised any defense based on the transfer or lack of transfer of Naranjo and that Naranjo's claims do not seek a transfer to another institution.  (Doc. 24 at 8-9).

The court agrees with defendants.  None of Naranjo's claims seeks a transfer or pertains in any way to DOC transfer decisions, and defendants have not advanced any defense based on the transfer of Naranjo to another institution in the DOC.  We therefore find that these requests are not relevant to the claims or defenses in this case and will not compel production of the requested documents.

## V.   <u>Conclusion</u>

We will deny Naranjo's ripe motions (Docs. 21-22) to compel discovery.  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:     September 16, 2021