## IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ISAAC NARANJO,** | : | **CIVIL ACTION NO. 1:20-CV-918** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **T. WALTER,** *et al.,* | : | |
| | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

This is a prisoner civil rights case filed pursuant to 42 U.S.C. § 1983.  Plaintiff, Isaac Naranjo, an inmate in the State Correctional Institution at Houtzdale ("SCI-Houtzdale") who was incarcerated in the State Correctional Institution at Rockview ("SCI-Rockview") at all relevant times, alleges that defendants violated his constitutional rights and committed the tort of false imprisonment under state law. Defendants have moved for summary judgment.  The motion will be granted.

I.      **Factual Background & Procedural History**[1]

On July 9, 2019, Naranjo was transferred to SCI-Rockview so that he could

complete Phase 1 of the Pennsylvania Department of Corrections' Special

Management Unit ("SMU") program.  (Doc. 73 ¶ 3; Doc. 77 ¶ 2).  On November 9,

2019, Naranjo was issued a misconduct citation for being in an unauthorized area of

the prison and breaking his cell restrictions.  (Doc. 73 ¶ 5; Doc. 77 ¶ 5).

Defendant Walter conducted a disciplinary hearing with respect to Naranjo's

misconduct citation on November 18, 2019.  (Doc. 73 ¶ 7; Doc. 77 ¶ 6).  After

reviewing available video footage, Walter found Naranjo guilty of the charged

misconduct and sentenced him to thirty days of disciplinary confinement beginning

on November 19, 2019.  (Doc. 73 ¶ 7).

---

[1] Local Rule 56.1 requires that a motion for summary judgment pursuant to
Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise
statement of the material facts, in numbered paragraphs, as to which the moving
party contends there is no genuine issue to be tried."  M.D. PA. L.R. 56.1.  A party
opposing a motion for summary judgment must file a separate statement of material
facts, responding to the numbered paragraphs set forth in the moving party's
statement and identifying genuine issues to be tried.  Id.  In this case, Naranjo's
statement is not directly responsive to defendants' statement, but it does address
and concur in many of defendants' factual assertions.  (See Doc. 77).  A counter-
statement of material facts that does not respond directly to the movants' statement
is not allowed by the Local Rules of this district, see, e.g., Holt v. Commonwealth of
of Pa., State Police Dep't, No. 1:18-CV-2448, 2021 WL 3511104 (M.D. Pa. Aug. 10,
2021); Barber v. Subway, 131 F. Supp. 3d 321, 322 n.1 (M.D. Pa. 2015), but the court
will nonetheless consider Naranjo's statement as part of its liberal construction of
his filings.  See, e.g., Sause v. Bauer, 585 U.S. __, 138 S. Ct. 2561, 2563 (2018) (noting
that district courts must liberally construe filings from *pro se* litigants).  Unless
otherwise noted, the factual background herein derives from the parties' Rule 56.1
statements of material facts.  (See Docs. 73, 77).  To the extent the defendants'
statement is undisputed or supported by uncontroverted record evidence, the court
cites directly to the defendants' statement.

Naranjo was given another misconduct citation for indecent exposure on November 19, 2019.  (Doc. 73 ¶ 8; Doc. 77 ¶ 11).  The citation arose from an incident in which Naranjo allegedly pulled his erect penis out of his pants in front of a correctional officer and began masturbating.  (Doc. 35 ¶ 36; Doc. 73 ¶ 8; Doc. 77 ¶ 11).  On the same day, Naranjo reported that he was feeling suicidal and was transferred to a psychiatric observation cell.  (Doc. 73 ¶ 9).

Defendant Walter conducted a second disciplinary hearing regarding Naranjo's indecent exposure charge on November 25, 2019.  (Doc. 73 ¶ 11; Doc. 77 ¶ 12).  Naranjo sought dismissal of the disciplinary charge because he was not served with notice of the hearing in the time period required by DOC policy.  (Doc. 35 ¶ 38).  Naranjo also requested that Walter review video evidence of the alleged incident.  (Id. ¶ 39).  Walter allegedly told Naranjo that she was not going to dismiss the charge because she did not care about DOC policy and allegedly stated that if Naranjo wanted "special treatment" he had to "suck [her] pussy."  (Id. ¶ 40).  Defendants Hall, Weller, and Curtis, who were all present in the room at the time of Walter's statement, allegedly smiled at the statement.  (Id. ¶ 41).  Defendant Weller then looked at defendants Hall and Curtis and allegedly said to Naranjo, "and suck these dicks too."  (Id.)  Defendants Hall and Curtis then allegedly stated, "yes boy, if you want special treatment you got [to] do that, suck these dicks too."  (Id.)

Defendant Walter subsequently reviewed the relevant video evidence and concluded that Naranjo was guilty of the charged offense.  (Doc. 73 ¶ 12; Doc. 77 ¶ 18).  Walter sentenced Naranjo to sixty days of disciplinary confinement to be served consecutively to his prior disciplinary sentence.  (Doc. 73 ¶ 12).

Following the second disciplinary hearing, Naranjo sought to file a sexual harassment complaint against Walter, Weller, Curtis, and Hall pursuant to the Prison Rape Elimination Act ("PREA") for the statements they made during the hearing.  (Doc. 73 ¶ 15; Doc. 77 ¶ 19).  Naranjo spoke about the alleged harassment with defendant Sherman, who told him that there were discrepancies between Naranjo's written and verbal versions of what occurred during the hearing.  (Doc. 73 ¶ 16).  Sherman warned Naranjo that he could be issued a misconduct if his allegations were deemed unfounded.  (Id. ¶ 17).  Sherman nevertheless investigated Naranjo's PREA complaint.  (Id. ¶ 18).

In the months following Naranjo's two disciplinary hearings, he unsuccessfully appealed both disciplinary sentences.  (Doc. 73 ¶ 13).  He was transferred to administrative custody on multiple occasions during this period because he was on a hunger strike and because he was awaiting transfer to another facility.  (Id. ¶ 14).

Naranjo alleges that defendants Hall, Weller, and Curtis verbally harassed him in the days following his second hearing.  On November 25, 2019, Weller allegedly came to Naranjo's cell and told him, "now snitch you will get some RHU time bitch."  (Doc. 35 ¶ 44).  On November 27, 2019, Walter and Weller allegedly asked Naranjo if he was a "fag" because he did "not like suck[ing] pussy."  (Id. ¶ 54).  Walter then purportedly asked him how he would feel about ninety days of disciplinary confinement and said, "this is SCI-Rockview, I do what I want to do." (Id.)  Naranjo told Walter to leave him alone, and Walter allegedly said, "fuck you"

4

in response.  (Id. ¶ 55).  Minutes later, Hall came to Naranjo's cell and allegedly called him a "rat" and a "fag."  (Id.)

On January 1, 2020, Naranjo was allegedly placed in protective custody based on a determination that placement in general population would endanger his safety.  (Id. ¶ 69).  On January 9, 2020, defendant Garman informed Naranjo that he was going to be returned to the SMU because he had failed phase 1 of the program.  (Id. ¶ 72).  On January 15, 2020, defendants McMahon, Houser, and Miller approached Naranjo and allegedly asked him if he wanted to return to general population.  (Id. ¶ 74).  Naranjo said that he did, and defendant Houser allegedly told him that he needed to withdraw his complaints against Walter, Weller, Hall, Curtis, and Sherman or he would never be allowed to return to general population.  (Id. ¶ 75).  On January 21, 2020, Garman ordered that Naranjo would remain in administrative custody pending his return to the SMU based on his failure to complete the SMU program.  (Id. ¶ 77).

McMahon, Houser, and Miller allegedly issued a report on February 5, 2020, stating that Naranjo should remain in protective custody, which Naranjo alleged was done in retaliation for his refusal to withdraw his complaints against Walter, Weller, Hall, Curtis, and Sherman.  (Id. ¶¶ 78-79).  Naranjo then appeared for a hearing in front of McMahon, Houser, and Miller on February 12, 2020, and they allegedly informed him that he would be placed in the SMU indefinitely based on his refusal to withdraw his complaints against the other defendants.  (Id. ¶ 80).

Naranjo initiated this case through the filing of a civil rights complaint pursuant to 42 U.S.C. § 1983 on June 5, 2020.  (Doc. 1).  Defendants answered the

complaint on September 22, 2020.  (Doc. 20).  Naranjo moved for leave to amend his

complaint on December 12, 2020, and he filed a proposed amended complaint on

February 16, 2021.  (Docs. 26, 35).  We granted the motion for leave to amend on

July 26, 2021 and deemed the amended complaint the operative pleading as of that

date.  (Doc. 45).

Naranjo's amended complaint raises constitutional claims for retaliation in

violation of the First Amendment, sexual harassment in violation of the Eighth

Amendment, deliberate indifference to plaintiff's right to be free from sexual

harassment in violation of the Eighth Amendment, violation of Naranjo's right to

petition the government in violation of the First Amendment, deliberate

indifference to Naranjo's health and safety in violation of the Eighth Amendment,

and deliberate indifference to the conditions of Naranjo's confinement in the SMU

in violation of the Eighth Amendment.  (Doc. 35 at 14-19).  He also raises a state law

claim for false imprisonment.  (Id. at 14).  Naranjo seeks declaratory relief,

injunctive relief, damages, and court costs.  (Id. at 20-21).  Defendants answered the

amended complaint on August 5, 2021.  (Doc. 46).

The case proceeded to discovery and Naranjo filed multiple motions to

compel discovery.  (Docs. 48, 54, 57).  On October 27, 2021, defendants moved to stay

the deadline for the filing of dispositive motions pending the resolution of the

motions to compel discovery.  (Doc. 58).  We granted the motion on October 28,

2021, extending the deadline for dispositive motions to two weeks from the date the

motions to compel discovery were resolved.  (Doc. 59).

We resolved the motions to compel discovery on November 30, 2021, denying

two of the motions and deeming the third motion withdrawn for Naranjo's failure to

file a supporting brief.  (Doc. 61).  Because neither party moved for summary

judgment prior to December 14, 2021 as required by our October 28, 2021 order, we

referred the case for mediation in the court's Prisoner Litigation Settlement

Program on January 6, 2022.  (Doc. 63).  The mediator reported on March 4, 2022

that mediation was unsuccessful.  (Doc. 65).

Defendants moved for an extension of time in which to file dispositive

motions on March 23, 2022.  (Doc. 67).  We granted the motion on April 11, 2022.

(Doc. 70).  Defendants filed the instant motion for summary judgment on May 2,

2022.  (Doc. 71).  Briefing on the motion is complete and it is ripe for review.  (Docs.

72, 76, 78-79).

## II.   Legal Standard

Through summary adjudication, the court may dispose of those claims that

do not present a "genuine dispute as to any material fact" and for which a jury trial

would be an empty and unnecessary formality.  FED. R. CIV. P. 56(a).  The burden of

proof tasks the non-moving party to come forth with "affirmative evidence, beyond

the allegations of the pleadings," in support of its right to relief.  Pappas v. City of

Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett,

477 U.S. 317, 322-23 (1986).  The court is to view the evidence "in the light most

favorable to the non-moving party and draw all reasonable inferences in that party's

favor."  Thomas v. Cumberland County, 749 F.3d 217, 222 (3d Cir. 2014).  This

evidence must be adequate, as a matter of law, to sustain a judgment in favor of the

non-moving party on the claims.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-

57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89

(1986).  Only if this threshold is met may the cause of action proceed.  See Pappas,

331 F. Supp. 2d at 315.

### III.   Discussion

Naranjo brings his federal constitutional claims under 42 U.S.C. § 1983.

Section 1983 creates a private cause of action to redress constitutional wrongs

committed by state officials.  42 U.S.C. § 1983.  The statute is not a source of

substantive rights, but serves as a mechanism for vindicating rights otherwise

protected by federal law.  See Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002);

Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  To state a Section 1983 claim,

plaintiffs must show a deprivation of a "right secured by the Constitution and the

laws of the United States . . . by a person acting under color of state law."  Kneipp,

95 F.3d at 1204 (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir.

1995)).  We address defendants' summary judgment arguments below.

### A.   Retaliation

Defendants seek summary judgment as to Naranjo's retaliation claim

because Naranjo did not exhaust administrative remedies with respect to defendant

Harvey, because there is no evidence of any adverse action taken by defendant

Sherman, and because Naranjo cannot establish the elements of a retaliation claim

against defendants Garman, McMahon, Houser, and Miller.  (Doc. 72 at 13-16).

Retaliation claims require proof that (1) plaintiff engaged in constitutionally

protected conduct; (2) defendants took retaliatory action against plaintiff that was

sufficient to deter a person of ordinary firmness from exercising his constitutional

rights; and (3) there was a causal connection between plaintiff's protected conduct

and defendant's retaliatory action.  Javitz v. Cty. of Luzerne, 940 F.3d 858, 863 (3d

Cir. 2019).  Prison officials may avoid liability for retaliation if they show that the

adverse action would have been taken regardless of whether plaintiff engaged in

protected conduct.  Rauser v. Horn, 241 F.3d 330, 334 (3d Cir. 2001).

We will grant summary judgment as to all defendants with respect to

Naranjo's retaliation claim because he cannot establish the elements of retaliation.[2]

First, with respect to defendants Walter, Weller, Hall, and Curtis, Naranjo's

allegation of retaliatory disciplinary proceedings and convictions fails because the

video evidence reviewed by defendant Walter during the disciplinary hearings

established that Naranjo committed the underlying misconduct.  (See Doc. 73 ¶¶ 7,

12).  Retaliatory misconduct claims fail when there is some evidence that the

prisoner plaintiff committed the underlying infraction.  See, e.g., Nifas v. Beard, 374

F. App'x 241, 244 (3d Cir. 2010) (nonprecedential).[3] (holding that retaliatory

misconduct claim fails when there is some evidence to support the misconduct

---

[2] Defendants do not make any arguments for summary judgment as to the retaliation claim against defendants Walter, Weller, Hall, or Curtis, apparently based on a mistaken belief that no such claim was raised in the amended complaint. (See, e.g., Doc. 35 at 10 n.9; 14).  We will *sua sponte* grant summary judgment as to this claim because Naranjo has advanced arguments opposing summary judgment with respect to the claim, (see Doc. 76 at 9-10), which indicates he had notice that the court might consider the claim and that he needed to come forward with all of his supporting evidence.  See In re SemCrude L.P., 864 F.3d 280, 296 (3d Cir. 2017).

[3] The court acknowledges that nonprecedential decisions are not binding upon federal district courts.  Citations to nonprecedential decisions reflect that the court has carefully considered and is persuaded by the panel's *ratio decidendi*.

charge); Carter v. McGrady, 292 F.3d 152, 159 (3d Cir. 2002) (holding that retaliatory misconduct charge failed because there was a quantum of evidence indicating that prisoner plaintiff committed underlying misconduct, and the decision to sanction him for misconduct was therefore based on a legitimate penological interest).

Second, the retaliation claim fails to the extent that it is based on verbal harassment, as the harassment alleged is not a sufficiently adverse action to support a retaliation claim. Verbal harassment may be sufficiently adverse to support a retaliation claim if the plaintiff has been subjected to "an entire campaign of harassment which though trivial in detail may have been substantial in gross." Suppan v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000); Yow v. Robertson, No. 1:19-CV-1042, 2021 WL 2400792, at *9 n.5 (M.D. Pa. June 11, 2021). But isolated incidents of verbal retaliation are not sufficiently adverse actions to support a retaliation claim. See e.g., Cooper v. Sherman, No. 1:17-CV-2064, 2019 WL 2408973, at *7 (M.D. Pa. June 7, 2019) (collecting cases); Keziah v. Superintendent Kerestes, No. 3:15-CV-2171, 2015 WL 8488426, at *2 (M.D. Pa. Dec. 10, 2015); cf. Burgos v. Canino, 358 F. App'x 302, 306 (3d Cir. 2009) (nonprecedential) (noting that isolated verbal threats do not constitute retaliation). The verbal harassment alleged in this case—a three-day period in which Weller told Naranjo, "now snitch you will get some RHU time bitch," Walter and Weller asked him if he was a "fag" because he did "not like suck[ing] pussy," Walter said, "fuck you," and Hall called Naranjo a "rat" and a "fag," (Doc. 35 ¶¶ 44, 54-55)—is not sufficient to support a retaliation claim.

Third, Naranjo cannot establish any adverse actions by defendants Sherman or Harvey that would deter a person of ordinary firmness from exercising his rights.

Naranjo's retaliation claim against Sherman is based on a purported threat by Sherman to charge Naranjo with misconduct for pursuing his PREA complaint against Walter, Weller, Hall, and Curtis. (See Doc. 35 ¶ 92). But the record reflects that Sherman informed Naranjo that a misconduct charge could be brought against him if his PREA allegations were deemed unfounded because of apparent discrepancies between Naranjo's verbal and written account of the underlying incident. (Doc. 73 ¶¶ 16-17). The record also reflects that Sherman subsequently investigated Naranjo's PREA allegations. (Doc. 73 ¶ 18). Sherman's actions—providing apparently accurate information on the possible consequences of filing a PREA complaint and subsequently investigating the complaint—do not amount to a sufficiently adverse action to support a retaliation claim. The only act allegedly performed by defendant Harvey—informing Walter, Weller, Curtis, and Hall that Naranjo was pursuing a PREA complaint against them, (see Doc. 35 ¶ 91)—is also not a sufficiently adverse action to support a retaliation claim.

Finally, the retaliation claim against defendants Garman, McMahon, Houser, and Miller fails because Naranjo cannot establish causation. Naranjo's retaliation claim against these defendants arises from McMahon, Houser, and Miller recommending that Naranjo remain in the SMU. (See Doc. 35 ¶¶ 97-110). The amended complaint also alleges, however, that Garman ordered that Naranjo would remain in the SMU because of his failure to complete the SMU program. (See id. ¶ 77). Naranjo has not produced any evidence showing that Garman's decision to return Naranjo to the SMU was motivated by anything other than Naranjo's failure to complete the SMU program. Hence, he cannot establish causation because the

record indicates he would have remained in the SMU regardless of whether he engaged in protected conduct.  See Rauser, 241 F.3d at 334.

## B.    Remaining Claims

Defendants are entitled to summary judgment as to Naranjo's remaining claims.  Naranjo's sexual harassment and deliberate indifference to sexual harassment claims fail as a matter of law because verbal sexual harassment unaccompanied by any other injury is not sufficient to establish an Eighth Amendment violation.  See, e.g., Sears v. McCoy, 851 F. App'x 668, 670 (3d Cir. 2020) (nonprecedential) ("A prisoner's allegations of verbal harassment, unaccompanied by another injury, are not cognizable under § 1983."); accord Proctor v. James, 811 F. App'x 125, 128 n.2 (3d Cir. 2020); Gandy v. Reeder, 778 F. App'x 149, 151 (3d Cir. 2019); Washington v. Rozich, 734 F. App'x 798, 801 (3d Cir. 2018); McCormick v. Kline, 670 F. App'x 764, 765 (3d Cir. 2016); Robinson v. Taylor, 204 F. App'x 155, 156 (3d Cir. 2006).

Defendants are entitled to summary judgment as to Naranjo's claim that defendants violated his right to petition the government for redress because the claim is duplicative of his retaliation claim.  (See Doc. 35 ¶¶ 87-90, 96, 99-100 (alleging that defendants "retaliated against Plaintiff Naranjo unlawfully, in violation of [his] rights to petition the government for redress of grievances").  The claim also fails on its merits because Naranjo has not alleged, or produced evidence of, any actual injury he suffered in his ability to seek redress from the government.

Defendants are also entitled to Naranjo's claims that defendants were deliberately indifferent to the conditions of his confinement and his health and

safety.  The deliberate indifference to conditions of confinement claim is based on

one paragraph in which Naranjo alleges in conclusory fashion that defendants

McMahon, Houser, Miller, and Garman were deliberately indifferent to the fact that

he had been forced to not eat and drink water, that his cell in the SMU was

extremely cold and "dirty with shit everywhere," that his cell did not have a

mattress, and that a "mental[ly] ill" inmate on his block regularly kicked and

banged on his cell door and yelled.  (Doc. 35 ¶ 83).  The deliberate indifference to

health and safety claim is based on Naranjo's conclusory assertion that McMahon,

Houser, Miller, and Garman were deliberately indifferent to Naranjo's "attempts to

commit suicide."  (Id. ¶ 84).  The amended complaint does not allege that

defendants were personally involved in these alleged violations of Naranjo's civil

rights or that they had any knowledge of the conditions of Naranjo's confinement.

Rather, the claims appear to be based exclusively on defendants' supervisory roles

in the prison, which is not a sufficient basis to allege their personal involvement.

See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Summary judgment as

to these claims is therefore appropriate because the amended complaint does not

allege defendants' personal involvement.

Defendants are likewise entitled to summary judgment as to Naranjo's state

law claim for false imprisonment.  To succeed on a false imprisonment claim under

Pennsylvania law, a plaintiff must show (1) that he was detained and (2) that the

detention was unlawful.  Harvard v. Cesnalis, 973 F.3d 190, 202 (3d Cir. 2020).

Naranjo's false imprisonment claim, which is based on his placement in disciplinary

confinement following his two disciplinary convictions, fails because there is no

13

evidence that Naranjo's detention in disciplinary custody was unlawful.  (See Doc. 35 ¶¶ 87-90).  Video evidence reviewed by defendant Walter during Naranjo's two disciplinary hearings showed that Naranjo was guilty of the underlying misconduct charges, (see Doc. 73 ¶¶ 7, 12), and Naranjo has not alleged that placement in disciplinary confinement for an inmate who has been found guilty of misconduct is unlawful.

Finally, defendants argue that summary judgment is warranted to the extent plaintiff (1) claims violation of his right to due process; (2) asserts a claim under 42 U.S.C. § 1981; (3) asserts a claim under 42 U.S.C. §§ 1985 and 1986; and (4) asserts a claim for violation of PREA.  (Doc. 72 at 21-25).  We do not construe the amended complaint as raising any of these claims.  Hence, we will grant summary judgment as to these claims for failure to state a claim upon which relief may be granted.

## IV.    Conclusion

We will grant defendants' motion (Doc. 71) for summary judgment.  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:    December 13, 2022